## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

JUANITA WILLIAMS, on behalf of herself
and others similarly situated,

    Plaintiff,

v.

CHOICE HEALTH INSURANCE LLC and
DIGITAL MEDIA SOLUTIONS, LLC,

    Defendants.

CIVIL ACT. NO._____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Juanita Williams ("Plaintiff" or "Ms. Williams"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

### NATURE OF ACTION

1. "Telemarketing calls are [] intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227 (2012)). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms," *id.* at § 2(9)." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 649 (4th Cir. 2019).

2.      "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to … initiat[e] any outbound telephone call to a person when … [t]hat person's telephone number is on the 'do-not-call' registry, maintained by the Commission.'). … [P]rivate suits can seek either monetary or injunctive relief. … This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer*, 925 F.3d at 649-50.

3.      Choice Health Insurance LLC commissioned telemarketing vendors, including Digital Media Solutions, LLC, to place telemarketing calls to Ms. Williams and other putative class members despite not having the requisite consent to contact those individuals who, like Plaintiff, were listed on the National Do Not Call Registry.

4.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

6. Plaintiff Juanita Williams is a resident of Alabama and this District who was located in this District at the time of the call.

7. Defendant Choice Health Insurance LLC ("Choice Health") is a South Carolina limited liability company with its principal place of business in South Carolina.

8. Defendant Digital Media Solutions, LLC ("DMS") is a Delaware limited liability company with its principal place of business in Florida.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

10. This Court has jurisdiction over Choice Health because it specifically commissioned telemarketing calls, including the calls to Plaintiff, to be sent into Alabama to Alabama consumers, causing harm there, and it does business itself in Alabama.

11. This Court has jurisdiction over DMS because it purposefully sent telemarketing calls into Alabama to Alabama consumers, including the calls to Plaintiff, causing harm there.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telemarketing calls at issue were sent into this District.

## TCPA BACKGROUND

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing …

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

15. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

16. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

18. Defendants Choice Health and DMS are "persons" as the term is defined by 47 U.S.C. § 153(39).

19. At no point has Plaintiff sought out or solicited information regarding Defendants' services prior to receiving the calls at issue.

<u>Calls to Plaintiff</u>

20. Ms. Williams's cellular telephone number, (334) 733-XXXX, is a residential telephone number.

21. It is not associated with a business and is used by Ms. Williams for personal purposes.

22. That telephone number has been listed on the National Do Not Call Registry as of August 11, 2022.

23. Despite that, Ms. Williams received a series of telemarketing calls from DMS on behalf of Choice Health beginning in August 2022.

24. The calls came from the Caller IDs 334-219-9148 and 334-219-8717.

25. Calls to those numbers are met with the greeting, "Thank you for calling Choice Health Insurance," confirming that the calls were on behalf of Choice Health.

26. Ms. Williams rejected calls from Defendants on August 16, 17, 19, 22, 26, 30, 2022 and September 6, 9, 16, 19, and 30, 2022.

27. On September 30, 2022, Ms. Williams answered a call from Caller ID 334-219-8717 and spoke with the sales representative, "Anthony," who proceeded to ask Ms. Williams a series of scripted questions for pre-qualification for health insurance.

28. "Anthony" then transferred the call directly to Choice Health. Ms. Williams spoke with Vernal Edwards, a licensed Choice Health insurance agent with the email address Vernel.Edwards@Choicehealthins.com, who proceeded to offer Choice Health's services.

29. Ms. Williams received two more calls from Defendants on November 16 and November 18, 2022 from the same Caller ID of 334-219-8717.

30. Prior to filing this action, Plaintiff, through counsel, contacted Choice Health about the calls and asked for any purported permission it believed it had to contact her.

31. Choice Health responded by informing Plaintiff that DMS had generated Plaintiff's lead. Choice Health further claimed that Ms. Williams "consented to allow us to contact her at the

indicated number, which prompted our calls" and explained that it had requested a copy of that permission from DMS.

32. Plaintiff followed up with Choice Health and asked for a copy of that permission, but it was never provided. That is because permission to contact Ms. Williams was never obtained and doesn't exist.

33. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

## CHOICE HEALTH'S VICARIOUS LIABILITY

34. For more than twenty years, the Federal Communication Commission ("FCC") has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Reguls. Implementing the Tel. Consumer Prot. Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

35. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

36. The FCC has instructed that sellers such as Choice Health may not avoid liability by outsourcing telemarketing to third parties, such as DMS:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places

> the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

37. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

38. Choice Health is liable for telemarketing calls placed by DMS to generate customers for Choice Health.

39. Choice Health authorized DMS to send telemarketing calls and transfer the call recipient directly to Choice Health.

40. Choice Health controls the day-to-day activities of DMS's telemarketing for Choice Health.

41. Choice Health restricts the geographic footprint into which its telemarketing vendors, including DMS, can cause calls to be made.

42. Choice Health required that its telemarketing vendors, including DMS, obtain its approval for the scripts and other marketing materials to be used.

43. Choice Health provided the specific criteria for the leads it would accept and required its vendors, including DMS, to adhere to those criteria.

44. Choice Health took responsibility in its written response to Plaintiff for placing the calls itself, further demonstrating that it retained DMS to place calls for it as if it had made those calls itself.

45. Choice Health knew or reasonably should have known that DMS was violating the TCPA on Choice Health's behalf, but Choice Health failed to take effective steps within its power to cause them to stop.

46. DMS has been named as a defendant in no less than six lawsuits since 2020 alleging that DMS violated the TCPA, including by violating the TCPA's prohibition on making calls to numbers on the National Do Not Call Registry, and has been involved in more cases as a third-party vendor responsible for calls that violated the TCPA.

47. DMS has also been the subject of numerous Better Business Bureau complaints alleging TCPA violations, including allegations of falsification of opt-in information.

48. A reasonable seller whose telemarketers are the targets of repeated telemarketing complaints would and should investigate to ensure that its telemarketing complies with the TCPA.

49. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CLASS ACTION ALLEGATIONS

50. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

51. Plaintiff brings this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23:

> **National Do Not Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of Defendants (3) to promote Choice Health services (4) within a 12-month period, (5) from four years prior to the filing of the Complaint.

Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

52. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the Class members.

53. Plaintiff and all members of the Class have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy.

54. This Class Action Complaint seeks injunctive relief and money damages.

55. The Class as defined above is identifiable through dialer records, other phone records, and phone number databases.

56. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

57. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

58. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

59. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

60. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) whether Choice Health is vicariously liable for DMS's conduct;

    (b) whether multiple telemarketing calls were made promoting Defendants' goods or services to members of the Class;

    (c) whether the telemarketing calls at issue were made to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (d) whether Defendants' conduct constitutes a violation of the TCPA; and

    (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

61. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.

62. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

63. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227(c)(5), et seq. and 47 C.F.R. § 64.1200(c))**
**on behalf of the National Do Not Call Registry Class**

64. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65. Defendant Choice Health violated the TCPA and the regulations by having its agent, Defendant DMS, make two or more telemarketing calls within a 12-month period to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

66. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are each entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

67. Plaintiff and National Do Not Call Registry Class members are each entitled to an award of treble damages if Defendants' actions are found to have been knowing or willful.

68. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting the third parties that generate leads for Choice Health from advertising its goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.  Injunctive relief prohibiting the third parties that generate leads for Choice Health from advertising its goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future;

B.  As a result of Defendants' negligent, willful, and/or knowing violations of 47 U.S.C. 227(c)(5), Plaintiff seeks for herself and each member of the Class up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D.  Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

_____
Joel Connally
ASB 3751-Y72J
Strength & Connally, LLC
7020 Fain Park Dr., Ste. 3
Montgomery, AL  36117
Telephone:  334.387.2121
E-mail:  jc@strengthconnally.com

Brian K. Murphy (*pro hac vice* to be filed)
Ohio Bar No. 0070654
Jonathan P. Misny (*pro hac vice* to be filed)
Ohio Bar No. 0090673
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
       misny@mmmb.com


Anthony I. Paronich (*pro hac vice* to be filed)
Massachusetts Bar No. 678437
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

13