**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

JUANITA WILLIAMS, on behalf of
herself and others similarly situated,

      Plaintiff,

v.

CHOICE HEALTH INSURANCE,
LLC,

      Defendant.

Case No. 1:23-cv-00292-RAH-KFP

CLASS ACTION

## PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

Plaintiff Juanita Williams ("Representative Plaintiff") and Defendant Choice

Health Insurance, LLC ("Defendant" or "Choice Health") (Representative Plaintiff

and Defendant are collectively referred to as the "Parties") have entered into a

Class Action Settlement Agreement ("Settlement Agreement" or "Agreement")[1] of

this matter, including settlement funding of up to $7,000,000 for the benefit of the

Settlement Class.[2]  Defendant has also agreed to terminate its relationship with the

data provider that sold Defendant the Class Member data used to make the calls at

---

[1] All capitalized terms not defined herein have the meanings set forth in the
Parties' Class Action Settlement Agreement (Doc. 35-1).

[2] Defendant does not oppose this Motion insofar as it seeks entry of the Final
Approval Order.  Defendant does not concede or admit Representative Plaintiff's
assertions in the Motion.

issue. This meaningful remedial relief itself is valued at not less than $2,278,460 for the Settlement Class. (*See* Doc. 37-1, Assessment of the Economic Benefit of Remedial Relief in Connection with the Class Action Settlement Agreement, prepared by Jon Haghayeghi, Ph.D. ("Haghayeghi Report").) The total economic value of the relief to be provided by Defendant to Settlement Class Members pursuant to the Agreement is, therefore, $9,278,460.

This is an excellent result. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled factual and legal questions.

On February 20, 2024, the Court preliminarily approved the Settlement. (Doc. 36.) Since that time, notice has been provided to class members and to the government under the Class Action Fairness Act. There were no objections to any aspect of the Settlement. Accordingly, Representative Plaintiff and Class Counsel hereby move for final approval of the Settlement for the reasons set forth in this memorandum and in the papers previously submitted in support of approval. Specifically, Representative Plaintiff and Class Counsel respectfully request that the Court: (1) grant final approval of the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (3) appoint Representative Plaintiff as class representative; (4) appoint Brian K. Murphy and Jonathan P. Misny of Murray Murphy Moul + Basil LLP and Anthony

Paronich of the Paronich Law, P.C. as Class Counsel; and (5) enter Judgment dismissing the action with prejudice.[3]

## II.    BACKGROUND

This case rests on alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), which prohibits, *inter alia*, initiating any telephone solicitation to a residential telephone number listed on the Do Not Call Registry. *See* 47 U.S.C. § 227(c). Representative Plaintiff is an individual residing in Alabama whose telephone number was listed on the Do Not Call Registry and who received a series of telemarketing calls from Defendant. On May 2, 2023, Representative Plaintiff filed a putative class action complaint against Defendant and Digital Media Solutions, LLC ("DMS") in the United States District Court for the Middle District of Alabama, captioned *Williams v. Choice Health Insurance LLC, et al.*, No. 1:23-cv-00292 (the "Litigation"). On July 17, 2023, DMS filed a declaration stating that while it did sell lead data to Choice Health, it did not make the calls at issue in this case. (Doc. 13-1.) On July 28, 2023, Representative Plaintiff filed a First Amended Class Action Complaint on July 28, 2023 naming only Choice Health as a Defendant, alleging Defendant violated the TCPA by making telemarketing calls to numbers on the National Do Not Call Registry. (Doc. 19.) On September 11, 2023, Defendant answered the

---

[3] A proposed order is attached as Exhibit 1.

First Amended Complaint, denying, among other things, that it had violated the TCPA.  (Doc. 28.)

After engaging in informal discovery, the Parties participated in a mediation on December 7, 2023, with Hon. Sidney I. Schenkier (Ret.) of JAMS, during which the Parties discussed the potential settlement of the Litigation.  As a result of the mediation, the Parties tentatively agreed to a potential settlement of the Litigation.  After follow up negotiations, the key terms of the Settlement were memorialized in the Agreement.

The Parties recognize and acknowledge the expense, time, and risk associated with continued prosecution of the Litigation through class certification, trial, and any subsequent appeals.  (Declaration of Brian K. Murphy ("Murphy Decl."), attached hereto as Exhibit 2, ¶ 3.)  Class Counsel has taken into account the strength of Defendant's defenses, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the Litigation, especially in complex actions such as this one, the inherent delays in such litigation, and the risk that a change in the law could nullify some or all of Representative Plaintiff's claims.  *See, e.g., Creasy v. Charter Commc'ns., Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335 (2020), are not actionable because the TCPA was unconstitutional until a 2015 amendment was

severed in *Barr*). (*See also* Murphy Decl. ¶ 4.) Representative Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class, whereas continued and protracted litigation, even if successful, may have ultimately delivered none. (*Id.* ¶ 6.) Based on their evaluation of all these factors, Representative Plaintiff and Class Counsel have concluded that the terms and conditions of this Settlement are in the best interests of Representative Plaintiff and the Settlement Class. (*Id.* ¶ 7.)

The Settlement establishes a Settlement Class for settlement purposes only, defined as:

> All persons throughout the United States to whom Choice Health Insurance, LLC placed, or caused to be placed, a call where (1) the call was directed to a telephone number registered on the National Do Not Call Registry for at least 30 days (2) Digital Media Solutions, LLC provided Defendant with the telephone number (but excluding telephone numbers that Zeeto Group provided to Digital Media Solutions, LLC and that Digital Media Solutions, LLC then provided to Defendant) and (3) the telephone number had at least two calls placed to it in a 12-month period.

(Agreement ¶ 1.1.9.) The Settlement Class consists of 276,177 individuals. (Murphy Decl. ¶ 12.)

Pursuant to the Settlement Agreement, upon preliminary approval, Defendant caused to be available a total amount up to $7,000,000. (Agreement ¶ 1.1.39.) Moreover, Defendant has agreed to terminate its relationship with DMS,

the data provider who sold Defendant the class member data used to make the calls at issue.  (*Id.* ¶ 4.4.)  This meaningful remedial relief itself is valued at not less than $2,278,460 for the Settlement Class.  The total economic value of the relief to be provided by Defendant to Settlement Class Members pursuant to the Agreement is, therefore, $9,278,460.  (Haghayeghi Report p. 11.)

Based on their evaluation, Representative Plaintiff and Class Counsel have concluded that the terms and conditions of this Settlement are in the best interests of the Settlement Class and confer substantial and immediate benefits upon the Settlement Class, whereas continued and protracted litigation, even if successful, may have ultimately delivered none.  Therefore, Plaintiff and Class Counsel believe that it is desirable that the Released Claims be settled pursuant to the terms and provisions of the Agreement.  (Murphy Decl. ¶ 7.)

## III.   IMPLEMENTATION OF THE PROPOSED SETTLEMENT

The Court entered its Preliminary Approval Order on February 20, 2024. (Doc. 36.)  Both before and after that date, the Parties have worked diligently with each other and the Settlement Administrator to effectuate the terms of the Agreement.  (*See* Declaration of Markeita Reid Re: Notice Procedures and Administration ("AB Data Decl."), attached hereto as Exhibit 3.)

Specifically, on February 26, 2024, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), the Settlement Administrator, A.B. Data, Ltd. ("AB Data"), sent out the CAFA Notice.  (*Id.* ¶ 2.)

The Parties provided AB Data with electronic data files containing 276,177 rows of data containing Settlement Class Member names, postal addresses, and telephone numbers.  (*Id.* ¶ 3.)  AB Data then processed the names and mailing addresses through the National Change of Address Database to update any address changes on file with the United States Postal Service.  (*Id.*)

On March 21, 2024, AB Data launched the Class Settlement Website.  (*Id.* ¶ 7.)  Since that time, the Class Settlement Website has had 49,874 unique visits.  (*Id.*)

Beginning on March 21, 2024, AB Data caused the Postcard Notice to be mailed to the 276,177 Settlement Class Member mailing addresses.  (*Id.* ¶ 4.)  AB Data has determined that the mailed Postcard Notices likely reached 244,912 of the 276,177 Settlement Class Members, which equates to a reach rate of the Postcard Notice of approximately 88.7%.  (*Id.* ¶ 6.)

In response to these robust notice efforts, AB Data has received 5,586 claims.  (*Id.* ¶ 9.)  Only three Settlement Class Members have opted out, and no Class Members have filed or otherwise submitted objections regarding the Settlement.  (*Id.* ¶¶ 10-11.)  This is an excellent result.

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Court approval is required for settlement of a class action.  Fed. R. Civ. P. 23(e).  The federal courts have long recognized a strong policy and presumption in

favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question … is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e), and final approval is clearly warranted.

> **A.      Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of Its Rights.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* MANUAL FOR COMPLEX LITIGATION § 21.312 (listing relevant information).

The Notice Plan satisfies these criteria.  As recited in the Agreement and above, the Notice Plan informed Class Members of the substantive terms of the Settlement and their options for remaining part of the Settlement, for objecting to the Settlement or Class Counsel's fee application, for opting out of the Settlement, for submitting a claim, and for obtaining additional information about the Settlement.  The Notice Plan was designed to directly reach a high percentage of Settlement Class Members.  Specifically, the individual mailed notice portion of the Notice Plan reached 88.7% of the Settlement Class Members, and the reach was further enhanced by the Class Settlement Website.  (AB Data Decl. ¶¶ 6-7.) This exceeds the requirements of due process.

Based on the claims submitted, to date, Settlement Class Members have filed claims at a rate that exceeds those seen in the majority of similarly structured settlements.  *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FEDERAL TRADE COMMISSION (Sept. 2019), p. 11, available at https://www.ftc.gov/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns (weighted mean (cases weighted by the number of notice

recipients) is 4%).  *See, e.g., Poertner v. Gillette Co.*, 618 Fed. App'x. 624, 625-26 (11th Cir. 2015) (approving settlement with claims rate of less than 1%); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 944-45 (9th Cir. 2015) (approving settlement with claims rate of less than 4%); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377-78 (S.D. Fla. 2007) (approving settlement with claims rate of approximately 1.1%); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting that claims rates in consumer class action settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"). Indeed, as explained in *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726-GOODMAN, 2015 U.S. Dist. LEXIS 151744, at *48-50 (S.D. Fla. Nov. 9, 2015), "Courts in this Circuit have approved claims-made class settlements where the claims rate was low, including approving single-digit claims rates. … In addition, courts often grant final approval of class action settlements before the final claims deadline. … The question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." (internal citations omitted).

### B. The Settlement Should Be Approved as Fair, Reasonable, and Adequate.

In deciding whether to approve a settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the

litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of the plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this settlement to be eminently fair, reasonable, and adequate.

### i. There Was No Fraud or Collusion.

The contested nature of the proceedings in this action demonstrates the absence of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec.*

*Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175, at *10 (M.D. Fla. Apr. 23, 2020) (internal citation omitted).

The Parties engaged in extensive, arm's-length negotiations with the assistance of a mediator to resolve the case with a view toward achieving substantial benefits for the Class as a whole, while avoiding the cost, delay, and uncertainty of further litigation, trial, and appellate practice. (*See* Murphy Decl. ¶ 6.) Representative Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations and benefited from mediating with experienced mediator Hon. Sidney I. Schenkier (Ret.) of JAMS. "The assistance of an experienced mediator in the settlement process confirms that [a] settlement is non-collusive." *Satchell v. Fed. Ex. Corp.*, No. C03-2659, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007).

### ii. The Settlement Will Avert Years of Complex Expensive Litigation.

The claims and defenses are complex; recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) ("a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial"). In contrast,

the Settlement provides immediate and substantial monetary benefits and remedial relief to the Settlement Class.

As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present settlement.

### iii. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement after devoting significant time and resources to investigating the claims against Defendant, researching and developing the legal claims at issue, and preparing for and attending the mediation.

(Murphy Decl. ¶ 5.) Class Counsel also spent considerable time researching and navigating Defendant's defenses. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate the strengths and weaknesses of Representative Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the litigation proceeded to judgment on a class-wide basis. (*Id*.) There was no need for further discovery, as the Parties exchanged calling and potential consent data that allowed both Parties to have all of the facts needed to understand the potential liability and defenses available in the case.

### iv. Representative Plaintiff and the Settlement Class Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent … settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 297, 314 (N.D. Ga. 1993).

The recovery achieved by this Settlement must be measured against the fact that any recovery by Representative Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Representative Plaintiff was able to certify a class and establish liability and damages at trial; (ii) the final judgment was affirmed on appeal; and (iii) Defendant was then able to satisfy the final judgment. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, including

specifically its consent defense, and the challenging and unpredictable path of litigation Representative Plaintiff and any certified class would have faced absent the Settlement. (Murphy Decl. ¶ 9.)

First, in a TCPA case alleging a violation by calling numbers on the National Do Not Call Registry, a defendant has a potential affirmative defense if it can demonstrate that it had adequate policies and procedures in place to prevent unwanted telemarketing calls. This represented an existential threat to the case. *See, e.g., Johansen v. EFinancial LLC,* No. 2:20-cv-01351-RAJ-BAT, 2021 U.S. Dist. LEXIS 251092 (W.D. Wash. Jun 11, 2021) (granting a defendant summary judgment for a defendant that contacted an individual on the Do Not Call Registry but claimed it had appropriate policies and procedures to prevent that conduct).

Second, despite Representative Plaintiff's confidence that this Court would certify the proposed class, she recognizes that class certification is far from automatic. *Compare Head v. Citibank, Inc.*, 340 F.R.D. 145 (D. Ariz. 2022) (certifying a TCPA class over objection) *with Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247, at *2 (C.D. Cal. Apr. 28, 2019) (denying class certification); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 271–72 (M.D. Fla. 2019) (same).

Interpretations of the TCPA are ever-evolving and notoriously unpredictable. And even had Representative Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the

statutory damages award to permit reassessment of that question guided by the applicable factors.").

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of final approval. The uncertainties and delays from this process would have been significant. (Murphy Decl. ¶ 8.)

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement providing benefits to the Settlement Class and society valued at over $9.2 million, including $7 million in monetary relief for the Settlement Class and meaningful injunctive relief valued at over $2.2 million, represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. … It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise."); *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *27 (E.D. Cal. Nov. 10, 2011) (immediate recovery for the class is "preferable to lengthy and expensive litigation with uncertain results") (internal citation omitted).

### v. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.*

As discussed above, Class Counsel was well-positioned to evaluate the strengths and weaknesses of Representative Plaintiff's claims, as well as the appropriate basis upon which to settle them. (Murphy Decl. ¶ 5.) Pursuant to the TCPA, each injured Settlement Class Member could have received $500 for each violation upon a successful verdict at trial, but such a result was uncertain and may have required years of litigation and, even then, may have resulted in no recovery at all given the changes in governing TCPA law and the total amount of potential damages arising from calls to Settlement Class Members.

Given the significant litigation risks the class faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, the Settlement makes available an immediate cash benefit of $7,000,000 to Settlement Class Members and provides meaningful remedial relief, with a total value of $9,278,460. (*Id.* ¶ 10.) The monetary relief alone is significant and exceeds the range of similar settlements. The per claiming Settlement Class

Member recovery is expected to be $33.79. (*Id.* ¶ 11.) This amount falls within the range of per claim payouts in the vast majority of TCPA class action settlements, including in cases involving direct liability against large companies. *See, e.g., In re Monitronics Int'l*, No. 1:13-MD-2493, Doc. 1214 (N.D.W. Va. June 12, 2018) (in a case with a certified adversarial class, granting final approval to $28 million TCPA settlement estimated to result in a payout of $38 per claim); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (in a direct liability case, granting final approval with a $39.66 payout per claim); *Rose v. Bank of Am. Corp.*, Nos. 5:11-CV-02390-EJD, 5:12-CV-04009-EJD, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (direct liability; $20-$40 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) (direct liability; $30 per claimant); *Markos v. Wells Fargo Bank, N.A.,* No. 1:15-cv-01156-LMM, 2017 WL 416425 (N.D. Ga. Jan. 30, 2017) (direct liability; $24 per claimant; deemed an "excellent result"); *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, Doc. 86 (S.D. Fla. Jan. 16, 2020) (direct liability; $10 voucher and $5 in cash, less attorneys' fees, costs, notice and administration costs, and service award, per claimant); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722, Doc. 44 (S.D. Fla. Nov. 1, 2019) (direct liability; $9, less attorneys' fees, costs, administration costs, and service award, per claimant); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) (direct liability; $33.36 per claimant). *See also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (in claims-made settlements, the total value of the

benefits made available by the settlement, and not the structure or claims rate, dictate the determination of "fairness, reasonableness, or adequacy" of the settlement and class counsel's requested attorneys' fees).

Underscoring the fairness of the compensation recovered for Settlement Class Members, the court in *Markos,* 2017 WL 416425, characterized a $24 per-claimant recovery in a TCPA class action—less than what participating Class Members stand to receive here—as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." *Id.* at *4. Here, Representative Plaintiff's counsel have secured a result that exceeds the recovery in *Markos.*

### vi. The Opinions of Class Counsel, Representative Plaintiff, and Absent Settlement Class Members Favor Approval.

The Settlement provides an extremely fair and reasonable recovery for the Settlement Class given the combined litigation risks, including the strength of Defendant's defenses, the challenging and unpredictable path of litigation, and the changing TCPA landscape. Class Counsel strongly endorses the Settlement given the significant risks in proceeding with litigating this case. (Murphy Decl. ¶ 9.) The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988); *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. [T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

To date, there have been no objections and only three opt outs from the Settlement. (AB Data Decl. ¶¶ 10-11.) Even if there were some objections (and there are none at this time), it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002).

## B.    The Court Should Certify the Class.

This Court provisionally certified the Settlement Class for settlement purposes only. (Doc. 36.) For all the reasons set forth in Plaintiff's preliminary approval briefing (Doc. 35), incorporated by reference herein, and the Preliminary Approval Order, the Court should finally certify the Settlement Class as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

Based on the foregoing, the Settlement is fair, reasonable, and adequate.

## V.    CONCLUSION

Representative Plaintiff and Class Counsel respectfully request that this Court: (1) grant final approval of the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (3) appoint Representative Plaintiff as class representative; (4) appoint Brian K. Murphy and Jonathan P. Misny of Murray Murphy Moul + Basil LLP and Anthony Paronich of the Paronich Law, P.C. as Class Counsel; and (5) enter Judgment dismissing the action with prejudice.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (admitted *pro hac vice*)
(OH 0070654)
Jonathan P. Misny (admitted *pro hac vice*)
(OH 0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
        misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
(MA 678437)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Joel Davidson Connally
Strength & Connally, LLC
7020 Fain Park Drive, Suite 3
Montgomery, AL 36117
jc@strengthconnally.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on June 24, 2024, I caused the foregoing to be filed via the Court CM/ECF filing system which will effect service on all counsel of record.

**/s/ Brian K. Murphy**
Brian K. Murphy